**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANET DAY and PAULA LANCAS,    ) | |
|                      ) | |
|       Plaintiffs,          ) | |
|                      ) | |
|       v.                   ) | Civil Action No. 07- 159 |
|                      ) | Hon. Nora Barry Fischer |
| BETHLEHEM CENTER SCHOOL    ) | |
| DISTRICT,                 ) | |
|                      ) | |
|                      ) | |
|       Defendant.        ) | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Plaintiffs Janet J. Day (hereinafter "Plaintiff" or "Day") and Paula S. Lancas (hereinafter "Plaintiff" or "Lancas") filed this civil action against Defendant Bethlehem Center School District (hereinafter "Defendant"), alleging violations of the Equal Pay Act ("EPA") of 1963, 29 U.S.C. §206(d)(1), and the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution by way of 42 U.S.C. §1983.

**II.    FACTUAL BACKGROUND**:

Day and Lancas are female teachers employed by Defendant. (Docket No. 1 at ¶¶ 2-3). Day has worked for Defendant since the 1999-2000 academic year. (Docket No. 16 at ¶ 2; Docket No. 26 at ¶ 2). She has been employed during that time as a speech/language pathologist/speech correction teacher. *Id.* Day holds both a Bachelor's and Master's degree in education and speech pathology, and she is certified by the Commonwealth of Pennsylvania to teach speech pathology/correction. *Id.* Prior to beginning her employment with Defendant, Day had six years of

1

experience as a speech/language pathologist for the Washington County Intermediate Unit I. (Docket No. 16 at ¶3; Docket No. 26 at ¶ 3).

Lancas has worked for the Defendant since the 2001-2002 academic year. (Docket No. 16 at ¶ 4; Docket No. 26 at ¶ 4). She has been employed during that time as a high school French teacher. (Docket No. 16 at ¶4; Docket No. 26 at ¶4). Lancas holds both a Bachelor's and Master's degree, and is certified by the Commonwealth of Pennsylvania to teach French, elementary education, and early childhood education. (Docket No. 16 at ¶ 5; Docket No. 26 at ¶5). Prior to beginning her employment with Defendant, Lancas had nineteen years of experience as a teacher: eight years in Pennsylvania public schools, one year in Ohio public schools, and ten years in parochial schools of the Catholic Diocese of Pittsburgh. (Docket No. 16 at ¶ 6; Docket No. 26 at ¶ 6).

The Bethlehem-Center School Board of Education and the Bethlehem Center Teachers' Association are parties to a collective bargaining agreement, which includes two salary scales, a Bachelor's salary scale and a Master's salary scale. (Docket No. 20 at ¶ 1; Docket No. 24 at ¶ 1). Defendant's Board of School Directors (hereinafter "Board") can negotiate with an individual to establish initial placement on the salary scale upon hire. (Docket No. 20 at ¶2; Docket No. 24 at ¶ 2). As part of the hiring process, the Superintendent recommends to the Board the initial step placement for a new teacher.[1] (Docket No. 20 at ¶ 3; Docket No. 24 at ¶ 3).

---

[1]

Generally, Plaintiffs do not dispute this fact. However, Plaintiffs responded by adding the following as clarification: Each Superintendent admits that Defendant's Board makes an independent determination outside any superintendent recommendation. (Docket No. 24 at ¶ 4). The Board was solely in charge of salary decisions, and those decisions were not a product of the superintendent's decision. *Id.* According to Byron Phillips, the superintendent at the time that Defendant hired and set the salary for Day and Kuhns, the salary was a board driven decision. *Id.*

Defendant pays its teachers pursuant to a salary scale in which education and years of teaching experience combine.[2]  (Docket No. 16 at ¶ 7; Docket No. 26 at ¶ 7). Every year of experience causes a teacher to move up on the salary scale.  (Docket No. 16 at ¶ 8; Docket No. 26 at ¶ 8).  Thus, Plaintiffs assert that a teacher with no experience is paid on the salary scale at Step 1; a teacher with one year of experience is paid on salary scale Step 2, and so on.  (Docket No. 16 at ¶ 8).  Defendant disputes this fact, and contends that although the vast majority of professional employees have entered the salary scale at Step 1, the Board can negotiate with an individual to establish initial placement on the salary scale upon hire.

Teachers with a Master's Degree are paid on the Master's Scale, and teachers with a Bachelor's degree on the Bachelor's scale, but the salary steps based on experience are used in both. (Docket No. 16 at ¶ 9; Docket No. 26 at ¶ 9).  However, no one is moved to the Master Degree scale for at least three years.  Even though a Step 1 designation exists on the Master Degree scale, it takes a newly hired teacher three years before he or she is moved to the Master Degree scale.  (Docket No. 16 at ¶ 10; Docket No. 26 at ¶ 10).  It is Defendant's practice that teachers are generally hired at Step 1 of the salary scale regardless of whether they teach elementary school or high school, and regardless of the subject they teach.  Thus, if a teacher teaches English or science, they are paid the same if they are both on the same salary scale step.  (Docket No. 16 at ¶ 11; Docket No. 26 at ¶ 11). Defendant does not have a different schedule based on teaching one subject versus another subject. If a teacher occupies a certain salary step, he or she is paid the same, whether teaching physics or

<hr>

[2]

Defendant agrees that education is a component of its salary scale, but further states that the other component is teaching experience in the District, as opposed to teaching experience in general. (Docket No. 26 at ¶ 7).

kindergarten. (Docket No. 16 at ¶ 12; Docket No. 26 at ¶ 12). As a general rule, Defendant does not award salary step credit for teaching experience with other school districts. (Docket No. 16 at ¶ 13; Docket No. 26 at ¶ 13).[3] Defendant places the vast majority of experienced teachers it hires at Step 1 on the salary scale. (Docket No. 16 at ¶ 14; Docket No. 26 at ¶ 14).

When Day began employment with Defendant during the 1999-2000 school year, she was hired at salary Step 1. (Docket No. 1 at ¶ 10). When Lancas commenced employment with Defendant during the 2001-2002 school year, she was hired at salary Step 2. *Id*. at ¶ 11.

Day and Lancas allege that during the period since January 16, 2004, Defendant has violated the EPA by paying its male teachers performing duties requiring equal skill, effort, and responsibility more than it has paid both of them. *Id*. at ¶ 9. They have identified two male teachers employed by Defendant to serve as comparators for the purpose of establishing their Equal Pay Act claim. (Docket No. 16 at ¶¶ 19- 23). The first comparator, Joseph Kuhns is a male art teacher employed by Defendant. (Docket No. 16 at ¶ 19; Docket No. 26 at ¶ 19). Kuhns began employment during the 1999-2000 school term. (Docket No. 16 at ¶ 23; Docket No. 26 at ¶ 23). Prior to beginning employment with Defendant, Kuhns had one year of teaching experience with Chartiers-Houston School District, located in Western Pennsylvania. (Docket No. 16 at ¶ 23; Docket No. 26 at ¶ 23). Kuhns was hired at pay Step 2 by Defendant. (Docket No. 16 at ¶ 23; Docket No. 26 at ¶ 23). The second comparator, Sean Virgili is a male special education teacher employed by Defendant. (Docket No. 16 at ¶ 19; Docket No. 26 at ¶ 19). Virgili began his employment during the 2000-2001 school

---

[3]

However, Defendant's School Board President at the time Day and Lancas were hired, Thomas Bair, believed the district was compelled to provide salary step credit for Pennsylvania teaching experience. (Docket No. 16 at ¶ 13, FN 4; Docket No. 26 at ¶ 13).

year. (Docket No. 16 at ¶ 23; Docket No. 26 at ¶ 23). Prior to beginning employment with Defendant, Virgili had two and a half years of teaching experience with Washington School District, located in Western Pennsylvania.[4] (Docket No. 16 at ¶ 23; Docket No. 26 at ¶ 23). Virgili was hired at pay Step 3 by Defendant. (Docket No. 16 at ¶ 23; Docket No. 26 at ¶ 23).

Plaintiffs allege that, by hiring the male-comparators, Kuhns and Virgili at higher initial pay steps, these male employees were given full credit for each year of prior teaching experience they had acquired within Pennsylvania, whereas neither Plaintiff was given such credit for her prior teaching experience. (Docket No. 1 at ¶¶ 23-28). Plaintiffs assert that this practice resulted in male teachers being paid more than they were being paid, for duties requiring equal skill, effort, and responsibility, although they both had more prior teaching experience than their male counterparts. (Docket No. 16 at ¶ 15). Thus, during the 2006-2007 school year, Day was being compensated at pay Step 8, although she had thirteen years of teaching experience by this time; likewise Lancas was being paid at pay Step 7, although she had twenty-four years of teaching experience. *Id*. at ¶¶ 16-18.[5] In comparison, during 2006-2007, male teacher Kuhns was being paid at step 9 although he had seven years of teaching experience, and Virgili was being compensated at step 10, although he had only six and a half years of experience. (Docket No. 16 at ¶ 19; Docket No. 26. at ¶ 19).

Defendant provided the following responses when asked in interrogatories to explain the

---

[4]

Defendant contends that Virgili had three years of full time teaching experience at the time of his hire. (Docket No. 26 at ¶ 23).

[5]

Defendant admits that for the 2006-2007 school year, the District paid Day at pay Step 8 of the salary scale and Lancas at pay Step 7 of the salary scale. (Docket No. 26 at ¶¶ 16, 18). However, Defendant contends that at the beginning of the 2006-2007 school year, Day had seven years of full time teaching experience in its District, and Lancas had five years of full time teaching experience in its District. (Docket No. 26 at ¶¶16, 18).

salary disparities between Lancas and Day. (Docket No. 16 at ¶¶ 25-27). First, Defendant claims Lancas was not provided salary credit for her experience because her experience was not at Defendant's District; second, Defendant contends it was not required to provide salary step credit for teaching experience in a private school, and finally, Defendant claims it "reserved the right" to assign salary step placement as it saw fit. (Docket No. 16 at ¶ 26; Docket No. 26 at ¶ 26). Asked the same question concerning Day, Defendant responded with essentially the same reasons: Day had no previous experience at Defendant's District, Defendant was not required to credit teaching experience in the Intermediate Unit, and Defendant's Board "reserved the right" to assign salary step placement as it saw fit. (Docket No. 16 at ¶ 27; Docket No. 26 at ¶ 27). Plaintiff maintains that the above three reasons offered by Defendant do not explain why Lancas and Day were denied salary step credit for their experience, while Kuhns and Virgili were offered full credit for their experience. (Docket No. 16 at ¶ 25). Defendant disputes Plaintiffs' interpretation and contends these responses provide evidence as to its reasons for the salary disparities. (Docket No. 26 at ¶ 25).

Plaintiffs state that Defendant's Rule 30(b)(6) designee, Karen Downie, and its School Board members echo the same explanations that Defendant provided in its answers to interrogatories, none of which explain the salary disparities. (Docket No. 16 at ¶¶ 28-32). In response, Defendant disputes Plaintiffs' interpretation. Defendant contends that Ms. Downies' and the board members' testimony provides ample evidence as to Defendant's reasons for the salary disparity, and emphasizes that said testimony consistently reiterates the following additional reasons as well: the Board of School Directors can negotiate with an individual to establish initial placement on the salary scale upon hired (Docket No. 26 at ¶¶ 28; 29); the board generally tried to hire the best qualified candidate at the lowest cost (*Id*. at ¶ 29; the board's general practice was to hire teachers

6

at step 1 (*Id*. at ¶¶ 28, 29); Lancas never told the Defendant that she would not come to the District if she was not hired on Step 13 (*Id*. at ¶ 28); although Day asked whether the District would consider her prior experience with regard to her salary, she did not make a demand; accordingly, the Board voted to hire her at Step 1, and she accepted this offer (*Id*. at ¶ 29).

Specifically, Plaintiffs highlight the testimony of several Board members and superintendents who served at the times when Plaintiffs and male-comparators, Kuhns and Virgili were hired and who were asked about Defendant's hiring decisions pertaining to these individuals. Plaintiffs maintain that Thomas Bair, the former Board Chairman, stated that the Board was not required under Pennsylvania law to provide Plaintiffs with full salary step credit for their teaching experience. (Docket No. 16 at ¶ 37). Defendant admits that this was his testimony, but disputes that this was his full testimony, further explaining that the District's solicitor had advised the Board that it was not required to provide step credit for Intermediate Unit experience. His personal objective was to hire the highest qualified candidate at Step 1 unless the District could not find anyone who would accept Step 1. (Docket No. 26 at ¶ 37). Plaintiffs further maintain that Mr. Bair stated that Defendant hired male-comparator Kuhns at Step 2 because he had taught 1 year at another school district, and that was the only reason. ( Docket No. 16 at ¶ 41). To the contrary, Defendant contends that Mr. Bair testified that Mr. Kuhns was hired at Step 2 because he had two years at a public school. (Docket No. 26 at ¶ 41). Mr. Bair also explained that male-comparator Virgili was hired at Step 3 because of his public school experience, and no other reason. (Docket No. 16 at ¶ 42; Docket No. 26 at ¶ 42).

When Donald Bartolomucci, the former Vice Chairman of the Board, was asked to explain the disparity between the women teachers' salaries and those of their male counterparts, he

concluded that it was probably because the male teachers had experience in the school district from which they were coming from and that the Plaintiffs accepted the salaries offered to them by the Board. (Docket No. 16 at ¶ 35). When asked specifically why Kuhns was offered Step 2, and Day only offered Step 1, and why Virgili was offered Step 3 but Lancas only Step 2, he stated that he did not know and could not answer the questions posed. *Id.* Defendant disputes Plaintiffs' summary of Mr. Bartolomucci's testimony as to Defendant's explanation for the salary disparities (Docket No. 26 at ¶ 35) and denies that he was unable to offer any further explanation in regard to Kuhns and Virgili. (Docket No. 26 at ¶ 36). Plaintiffs maintain that other Board members and superintendents who served when Day, Lancas and the male-comparators, Kuhns and Virgili, were hired offered no further explanation of the salary disparities. *Id.* at ¶ 36.[6]

As noted above, Defendant alleges that any disparity between the initial step placement of Plaintiffs and the male comparators was based on a factor other then sex, i.e. the males' insistence that they would not come to the District for lower than a particular step placement. (Docket No. 18 at ¶ 6). During an interview with Defendant prior to being hired, male-comparator Kuhns stated that he needed to be placed on Step 2 in order to come to Defendant's District. (Docket No. 20 at ¶ 37). Plaintiffs dispute this assertion as stated. Rather, they contend that during a discussion, Kuhns was asked what salary he was seeking, and told the Board that he would require Step 2 to teach there probably. (Docket No. 24 at ¶ 37). Further, after Kuhns told Defendant he wanted Step 2, he never

---

[6]

Although the Court specifically references the disagreement between the parties' interpretation of the testimony provided by Thomas Bair and Donald Bartolomucci, the Court notes that the parties also dispute the testimony of Board Member Joan Sloan, Board Member Valerie Caprini, Superintendent Byron Phillips, Substitute Superintendent John Micco, Superintendent Herman Jackson, and Substitute Superintendent Vicki Monas as to same. (Docket No. 16 at ¶¶ 43-60; Docket No. 26 at ¶¶ 43-60).

talked to any administrator or board member about salary, and no one ever told him the salary was offered on a take it or leave it basis. *Id*. Likewise, Defendant states that it initially offered male-comparator Virgili his position at Step 1, but that he told Defendant that he was interested in the position but he "would not come work [for Defendant] for less than Step 3." (Docket No. 20 at ¶ 48). Accordingly, he was hired at Step 3 because that was the minimum starting salary he would accept to leave his job and come to the District. *Id*. at ¶ 49. Plaintiffs dispute these facts. (Docket No. 24 at ¶ 48, 49).

In comparison, the Defendant maintains that during Day's interview, she asked whether Defendant would consider her prior experience with regard to her salary, but she did not make any sort of demand for a higher salary. (Docket No. 20 at ¶ 15). Day disputes this statement and contends that she requested that her experience be considered in determining her salary step placement. (Docket No. 24 at ¶15). During her interview, she said she would appreciate if the School Board would consider her experience when it made a final decision, and if she was hired would like to be placed on a step commensurate with her experience. *Id*. Thereafter, at a monthly meeting, Defendant's Board voted to hire Day at step 1, and Day accepted the offer. (Docket No 20 at ¶ 16; Docket No. 24, at ¶ 16). During Lancas' initial interview she stated that she would like to earn more than she had been earning and would like credit for her prior teaching experience. (Docket No. 20 at ¶ 25; Docket No. 24 at ¶25). During another interview, Lancas stated that she was willing to negotiate a salary that was fair to both her and Defendant, but she never told Defendant that she would not come to work for Defendant, if she were not hired on a salary step that took into account her prior teaching experience. (Docket No. 20 at ¶ 26; Docket No. 24 at ¶ 26).

Turning to Plaintiff Lancas, the Defendant also maintains that she did not demand higher

placement. Instead, it contends when Lancas was informed that she had been voted for hire by Defendant's Board with an initial salary placement at Step 2, she accepted the position because she was interested in a high school French position, and it was worth it to her to come to work for Defendant at Step 2 to get that teaching position. (Docket No. 20 at ¶¶ 28-29). Lancas does not dispute this fact but contends that it is incomplete. (Docket No. 24 at ¶ 28). Additionally, Lancas maintains that when she mentioned her salary during her interview, no one ever replied. *Id*. Rather, Defendant called her the evening the Board voted to hire her and told her that she was to be hired at Step 2, and the only reason offered was that " it was the decision of the School Board." *Id*. When Lancas expressed disappointment and asked Defendant if there was any possibility for discussion or negotiation regarding a different salary placement, Defendant said step 2 was the "firm decision of the school board and that if she was interested in the position, she should report to the school and fill out the necessary paperwork. *Id*.

## III. PROCEDURAL HISTORY

On February 8, 2007, Plaintiffs commenced this action. (Docket No. 1). At that time, the case was assigned to Chief Judge Donetta W. Ambrose. On September 10, 2007, Plaintiffs filed a Motion for Partial Summary Judgment as to Count I (Plaintiff Day's EPA claim) and II (Plaintiff Lancas' EPA claim) of the Complaint and Brief in Support. (Docket Nos. 14 and 15). Defendant also filed a Motion for Summary Judgment and Brief in Support on September 10, 2007. (Docket Nos. 18 and 19). Thereafter, on October 10, 2007, Plaintiffs filed a Response/Brief in Opposition to Defendant's Motion and Defendant filed its Brief in Opposition to Plaintiffs' Motion. (Docket Nos. 22 and 27). Subsequently, this case was reassigned to Judge Nora Barry Fischer on October 18, 2007. (Docket No. 29). On October 25, 2007, this matter was fully briefed once Defendant filed

its Sur-Reply Brief.  (Docket No. 31).

## IV.  STANDARD

Summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Pursuant to Rule 56, the Court must enter summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact.  *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986).

In evaluating the evidence, the Court must interpret facts in the light most favorable to the non-moving party, and draw all reasonable inferences in their favor.  *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).  Initially, the burden is on the moving party to demonstrate that the evidence in the record creates no genuine issue of material fact.  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).  In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party.  *Id.* at 249.  "The court may consider any material or evidence that would be admissible or usable at trial in deciding the merits of a motion for summary judgment." *Turner v. Leavitt*, Civil Action No.

05-942, 2008 WL 828033, at *4 (W.D. Pa. March 25, 2008) (citing *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (citing 10 WRIGHT AND MILLER, FEDERAL PRACTICE § 2721 at 40 (2d ed.1983))); *Pollack v. City of Newark,* 147 F. Supp. 35, 39 (D.N.J. 1956), *aff'd*, 248 F.2d 543 (3d Cir. 1957), *cert. denied*, 355 U.S. 964 (1958) ("in considering a motion for summary judgment, the court is entitled to consider exhibits and other papers that have been identified by affidavit or otherwise made admissible in evidence").

While the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the admissible evidence in the record would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322-323. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324. The nonmoving party "cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

Further, Local Rule of Court 56.1.E describes the consequences of either party's failure to follow the rules set forth pertaining to submission of concise statements of material facts and responsive concise statements of material facts for summary judgment motions stating that "facts claimed to be undisputed 'will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." W.D. Pa. L. R. 56.1(E); *Hickenbottom v. Nassan*, 2007 U.S. Dist. LEXIS 24336 (W.D. Pa. Mar. 30, 2007).

**IV.    DISCUSSION**

Presently before the Court are cross-motions for summary judgment. Plaintiffs have moved for partial summary judgment with respect to Plaintiffs' EPA claims (Counts I and II) of the Complaint; or alternatively, for summary judgment on defendant's fifth affirmative defense. (Docket No. 14). For the reasons discussed below, Plaintiffs' partial summary judgment motion is denied.

Defendant has moved for summary judgment with respect to all three of Plaintiffs' claims in the Complaint. (Docket No. 18). As discussed below, the record does not support Defendant's arguments, and accordingly, Defendant's motion for summary judgment is likewise denied.

For the purpose of analyzing said motions, the Court construes the parties' briefs as not disputing the fact that Plaintiffs have established prima facie cases. Before addressing the parties' arguments, the Court first turns to the standard it must consider when analyzing an EPA claim because said standard applies to both motions before this Court.

EPA claims follow a two-step burden shifting analysis. *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). Plaintiffs must first establish a *prima facie* case by demonstrating that employees of the opposite sex were paid differently for performing "equal work" under similar working conditions. *Stanziale*, 200 F.3d at 107 (citing *E.E.O.C. v. Delaware Dept. of Health and Soc. Servs.*, 865 F.2d 1408, 1413-14 (3d Cir. 1989)). The burden of persuasion then shifts to Defendant to demonstrate the applicability of one of the following four affirmative defenses specified in the Act: (1) a bona fide seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. *Stanziale*, 200 F.3d at 107 n. 6.

"Because the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense 'so clearly that no rational

jury could find to the contrary.'" *Stanziale*, 200 F. 3d at 107 (citing *Delaware Dept. of Health and Social Services*, 865 F.2d 1408, 1414 (3rd Cir. 1989)). To satisfy its burden, "the employer must submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *Id*. The Court now turns to the parties' respective motions.

A.      **Plaintiffs' Motion for Summary Judgment**

The Court reads Plaintiffs' motion as calling into question whether Defendant's fifth affirmative defense that "Plaintiffs' starting salaries were based on factors other than sex" (Docket. No. 8 at 5) satisfies two different burdens that it is required to meet: (1) Defendant's burden to identify or plead the applicability of one of the four affirmative defenses under the EPA which can explain the alleged wage disparity in this matter; and (2) Defendant's burden to demonstrate sufficient proof of its asserted affirmative defense to defeat Plaintiffs' motion for summary judgment.

First, Plaintiffs argue that Defendant has not identified one of the four EPA affirmative defenses to explain the salary discrepancies in this matter and, therefore, the Court should grant summary judgment in their favor as a matter of law on Plaintiffs' EPA claims (Counts I and II). (Docket No. 14 at ¶ 19). Defendant contends that it has raised one of the four affirmative defense under the EPA, i.e., a differential based on any factor other than sex. (Docket No. 27 at 6). Defendant also argues that the record establishes that "any differential in the male comparators' salaries is due to factors completely unrelated to sex, specifically their firm persistence in negotiating with the District." (Docket No. 27, at 7). "The fourth affirmative defense (any other factor than sex) is a broad 'catch all' exception and embraces an almost limitless number of factors, so long as they

do not involve sex." *Fallon v. Illinois*, 882 F.2d 1206, 1211 (7th Cir. 1989) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974)).  Accordingly, the Court finds that Defendant has identified the applicability of an affirmative defense under the EPA which could explain the alleged wage disparity, thereby satisfying its initial burden, and hence, Plaintiffs are not entitled to summary judgment as a matter of law on this basis.

Secondly, Plaintiffs assert that even if Defendant has identified one of the affirmative defenses under the EPA, Defendant should not be able to prevail at the summary judgment stage because there is no evidence in the record to support its position.  The Court disagrees and finds that the record as outlined above demonstrates the existence of material issues of fact that preclude the Court from deciding in Plaintiffs' favor.

Accordingly, Plaintiffs motion for summary judgment is DENIED.

**B.      Defendant's Motion for Summary Judgment**

In its motion for summary judgment, Defendant contends that Plaintiffs' EPA claims should be dismissed because a reasonable factfinder can conclude that any wage disparities between Plaintiffs and the male comparators are based on factors other sex.  (Docket No. 18 at ¶ 4).  With respect to Plaintiffs' equal protection claim (Count III), Defendant asserts that this claim fails because no reasonable factfinder could conclude that the Defendant violated Plaintiffs' right to equal protection of the laws, as set forth in the Fourteenth Amendment to the United States Constitution. (Docket No. 18 at ¶ 19).  As discussed below, the record does not support Defendant's arguments. Hence, Defendant's motion for summary judgment is likewise denied.

Before turning to Defendant's arguments, in Plaintiffs' response to Defendant's summary judgment motion, they assert that Defendant's negotiation reason fails as a matter of law under the

15

EPA as it is not a valid factor other than sex. (Docket No. 22 at 5-7).  Although Plaintiffs present a compelling argument as to why the Defendant's factor other than sex, i.e., negotiation, fails as a matter of law, they do not cite any cases directly on point that support their position.  At best, the cases to which Plaintiffs refer suggest that negotiation as a factor other than sex is not dispositive when granting a summary judgment motion for a defendant, but do not find as a matter of law that negotiation is not a factor other than sex.  In fact, as noted above, the legislative history with regard to the EPA's affirmative defense, a factor other than sex, has been interpreted as being "a broad 'catch all defense' exception and embraces an almost limitless number of factors, so long as they do not involve sex", thereby persuading this Court that negotiation could be considered a factor other than sex.  *Fallon v. Illinois,* 882 F.2d 1206, 1211 (7ᵗʰ Cir. 1989) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 197 (1974)); *See also* BARBARA T. LIEMANN & PAUL GROSSMAN (C. Geoffrey Weirich ed.) , EMPLOYMENT DISCRIMINATION LAW  1254 (4ᵗʰ ed., vol. I 2007).

### 1.     Plaintiffs' EPA Claims

Defendant does not dispute that Plaintiffs have established prima facie cases for their EPA claims.  Rather, Defendant claims that Plaintiffs' EPA claims should be dismissed because it has raised the affirmative defense that the differentials in pay between Plaintiffs and the male comparators are based on a bona fide use of a factor other than sex, namely that the male comparators persistently negotiated with the Defendant for a higher salary.  (Docket No.19 at 7).  To the contrary, the Court finds that the record raises material issues of fact as to whether the male comparators' negotiation tactics were the sole factor in setting the pay scale.

"Because the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense 'so clearly that no rational

jury could find to the contrary.'" *Stanziale*, 200 F. 3d at 107 (citing *Delaware Dept. of Health and Social Services*, 865 F.2d 1408, 1414 (3d Cir. 1989)). To satisfy its burden, "the employer must submit evidence from which a reasonable factfinder could conclude not merely that the employer's proffered reasons could explain the wage disparity, but that the proffered reasons do in fact explain the wage disparity." *Id*.

This Court concludes that genuine issues of material facts exist for determination by a jury regarding whether negotiation could have played a part in the pay differential between the Plaintiffs and their comparators. The fact that the comparators successfully negotiated to start at a higher pay for their salary, standing alone, is not dispositive, and does not entitle Defendant to summary judgment. *See Klaus v. Hilb, Rogal & Hamilton Co. Of Ohio*, 437 F. Supp. 2d 706, 724 (S.D. Ohio, Jun. 30, 2006). In addition, Plaintiffs, both females, have adduced evidence (in the form of their own testimony) that their education and experience were superior to that of their male comparators, raising a question as to whether the wage differences were based solely on negotiation. (Docket No. 16 at ¶ 23).

Further, the testimony provided by various witnesses for the Defendant does not uniformly support its articulated reason, i.e. negotiation, as to why the male comparators were paid more than the Plaintiffs, and said testimony requires credibility determinations, which are best left to a factfinder. *See Metzger v. Osbeck*, 841 F.2d 518, 521 (3d Cir. 1988) ("a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder.")

Although the Defendant broadly contends the male comparators were hired at steps higher than Step 1 because they negotiated and that its general practice is not to award salary step credit for prior teaching experience with other school districts, Plaintiffs highlight inconsistencies in its position. The Court agrees with Plaintiffs that said inconsistencies create material issues of fact as to Defendant's allegedly neutral negotiation explanation for the salary disparity. (Docket No. 22 at 16). Moreover, a reasonable factfinder could view the Defendant's proffered testimony as "a refusal to negotiate with women, while simply accepting the first overture of the men." (Docket No. 22 at 16). For example, Thomas Bair, the former Board Chairman, specifically stated that Defendant hired male comparator Kuhns at Step 2 because he had taught one year at another school district, and that was the only reason. (Docket No. 16 at ¶ 41). He also explained that male comparator Virgili was hired at Step 3 because of his public school experience, and no other reason. *Id*. at ¶ 41. Further, Donald Bartolomucci, who served on Defendant's Board for twelve years and was Vice Chairman of the Board during the times in question, after attempting to explain the discrepancy for various reasons, including out of district experience, eventually arrived at the conclusion that the salary discrepancy must be because Plaintiffs "accepted" the offer. (Docket No. 16, at ¶35). Additionally, Plaintiffs point out that other Board members who served during the time Plaintiffs and the male comparators were hired offer no more detail in their explanations. *Id*. at ¶¶ 36-51. Likewise, in Plaintiffs' opinion, many of the Defendant's superintendents, such as Byron Phillips, John Micco, Herman Jackson, and Vicki Moans have difficulty explaining the discrepancies in the salaries, either stating that they did not have a reason, did not recall the reason, or did not specifically mention negotiation as a reason. *Id*. at ¶¶ 52-60. Additionally, Plaintiffs point out that Byron Phillips believes that male comparator Kuhns was hired at Step 2 because he had Board connections, suggesting he

was a hired for political reasons.  (Docket No. 20, at ¶ 38).

Given the various superintendents' and school board members's repeated inability to cite negotiation as the predominant reason for the salary differentials; Plaintiffs' testimony as to their superior experience and education; the inconsistencies between the Board's testimony and what is asserted to be the Defendant's hiring policy relevant to consideration of out of district teaching experience; and viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that negotiation was not the sole reason why the comparators were paid more.  *See Defurio v. Elizabeth Forward School District*, Civ. No. 05-1227, 2007 WL 2752176 (W.D. Pa. Sept. 19, 2007).  Further, Plaintiffs argue, and the Court agrees, that Defendant's reasons have not remained consistent throughout the proceedings, suggesting that such inconsistencies create material issues of fact.  (Docket No. 22 at 15-19).  Specifically, Defendant's proffered reason, i.e. negotiation, did not evolve until the summary judgment stage in this matter.  In fact, the reasons Defendant offered to the EEOC are identical to the reasons Defendant's lawyer offered to the EEOC in the *Defurio* case.  Thus, a reasonable jury could find that said reasons were pretext. *Id.*

Accordingly, Defendant is not entitled to summary judgment on Plaintiffs' EPA claims (Counts I and II).

### 2.      Plaintiffs' Equal Protection Claim

Unlike Plaintiffs' EPA claims, discrimination claims under the Equal Protection clause are analyzed using the three-step burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Stewart v. Rutgers, the State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997) (showing plaintiff must prove for an Equal Protection claim pursuant to 42 U.S.C. § 1983 gender discrimination is the same as Title VII claims).  In order to prove a prima facie case that the

Defendant violated their right to the equal protection of the laws, Plaintiffs must prove that: (1) they were members of a protected class; (2) they were similarly-situated to members of a non protected class; and (3) they were treated differently than members of the unprotected class. *Id*. at 432. Once a plaintiff establishes the prima facie case, the burden shifts to the Defendant to articulate some legitimate, nondiscriminatory reason for its adverse employment action. *Id*. at 432. Then, if Defendant is successful, the burden shifts back to the plaintiff, who must demonstrate that the employer's articulated reason was not the actual reason, but rather a pretext for discrimination. *Id*.

Plaintiffs must prove that they suffered purposeful or intentional discrimination on the basis of gender to establish an Equal Protection claim. *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1997). Further, in order for Plaintiffs to survive summary judgment, they must present sufficient evidence to raise a genuine issue of material fact as to whether the Defendant's proffered reasons were not its true reasons for the challenged employment action. *Stewart*, 120 F.3d at 433 (citing *Fuentes v. Perskie,* 32 F.3d 759 (3d Cir. 1994)). "The plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherence or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Stewart*, 120 F.3d at 432-433 (quoting *Fuentes*, 32 F.3d at 759).

The Court is required to examine the evidence of record in the light most favorable to Day and Lancas (as they are the parties opposing summary judgment) and resolve all reasonable inferences in their favor. *Stewart*, 120 F.3d at 431. "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart*, 120 F.3d at 431 (citing *Robinson v. PPG Industries, Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994).

Here, Defendant does not contend that Plaintiffs cannot meet their burden of establishing prima facie cases. Rather, Defendant argues that Plaintiffs have no evidence showing that their salary differential is a result of purposeful discrimination, and further, that Plaintiffs' claims should be dismissed because it has presented a legitimate, non-discriminatory reason for its actions regarding starting salaries, i.e., negotiation by the male comparators. (Docket No. 19 at 10).

To the contrary, this Court finds that Plaintiffs have adduced sufficient evidence that would allow a factfinder to disbelieve the proffered non-discriminatory reason set forth by Defendant, concluding that the alleged salary differentials stemmed from discrimination based on gender. First, Plaintiffs (both females) have shown evidence (in the form of their own testimony) that their education and experience were superior to that of their male comparators, raising a question as to whether the alleged wage differences were based solely on negotiation tactics. (Docket No. 16 at ¶ 23). Second, as discussed above, the superintendents' and board members' consistent and repeated inability to cite negotiation as the basis for hiring the male comparators at steps higher than Step 1, and the contradiction between the Board members' testimony as to why the male comparators were placed at higher steps, i.e. out of district experience, versus the asserted policy that new teachers generally are not given credit for such experience, casts doubt as to whether negotiation was the actual reason for the salary differentials. Hence, as this discrimination claim is largely based on the credibility of various witnesses' testimony, viewing the evidence rigorously, in the light most favorable to the Plaintiffs, this Court finds that a reasonable jury could conclude that negotiation was not the reason for the salary differentials, but rather a pretext.

Accordingly, Defendant's motion for summary judgment is DENIED, as to Plaintiffs' Equal Protection claim (Count III).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' partial motion for summary judgment on Count I and II, of the Complaint, or alternatively, for summary judgment on Defendant's fifth affirmative defense is DENIED.  Further, Defendant's motion for summary judgment is DENIED.  In addition, the Court HEREBY ORDERS the following:

(1) Plaintiffs' pretrial statements shall be filed on or before <u>May 22, 2008</u>;

(2) Defendant's pretrial statements shall be filed on or before <u>June 5, 2008</u>; and

(3) The Court shall conduct a status conference in order to set a trial date and corresponding pretrial deadlines in this matter on <u>June 9, 2008 at 4:00 p.m.</u>

<u>*/s/Nora Barry Fischer*</u>
Nora Barry Fischer
United States District Judge

dated:        May 9, 2008

cc/ecf:        All counsel of record